# EXHIBIT 1



Filed
09 September 14 P5:23
Margaret G. Montemayor
District Clerk
Bexar District
Accepted by:
Veronica Rodriguez

CAUSE NO. 2009CI15137

BARRY RUPERT AND CAROL RUPERT; DAVID §
QUINTOS AND DIANA DIMITROVA STOILOVA; §
ELIZABETH RUNKLE; LIONEL ALESSIO TRIAS, §
AS CO-FOUNDER OF FUNDACION DIGSA; DAN §
AULI PANOS, VICTOR AULI, NAYADE PANOS §
PECHE; ANA DEL CARMEN BALLESTEROS §
BERROCAL AND CARMEN BERROCAL MORA; §
ALBERTO BARON ADLER, RUTH BARON §
CHARNEY AND SYLVIA CHARNEY DE BARON; §
JOSE BEITMAN, GREGORIO BEITMAN, §
ABRAHAM DIAMANT, AARON MARCOS §
DIAMANT AND LIBE DIAMANT; NEAL BENNER §
AND CECILIA BENNER; JORGE MANUEL §
BRENES RAMIREZ; GERMAN BRICIO §
ARZUBIDE; DAVID CABRERA; FRANCISCO §
CABRERA AND ELIZABETH CABRERA; FRANK §
CAMMISANO; LUIS CHARUA GUINDIC AND §
ADELA LEVY DE CHARUA; ELIAS CHARUA §
LLADANI; MOISES CHARUA GUINDIC AND §
LILIA GARCIA BUSTAMANTE; JAMES COLLINS §
AND REBECCA COLLINS; PAULO COSTAL; §
JORGE CARLOS GONZALEZ DE COSSIO §
SEPTIEN, MARIA ISABEL GONZALEZ DE COSIO §
SEPTIEN AND MARIA GUADALUPE SEPTIEN §
HERRAN; ARNOLDO DE LEON SANCHEZ, LUIS §
GONZAGA DE LEON GONZALEZ, LUIS §
GONZAGA DE LEON SANCHEZ, MARIANA DE §
LEON SANCHEZ AND JORGE ANTONIO DE §
LEON SANCHEZ; CARLOS ESTRADA, JOSE §
ESTRADA, AND RICARDO ESTRADA; PILAR §
BRUN LOSCERTALES, ANGEL GONZALEZ DE §
COSSIO CASTANEDO, MARIA DEL PILAR §
GONZALEZ DE COSIO BRUN AND MIGUEL §
ANGEL GONZALEZ DE COSSIO BRUN; MOISES §
GUAKIL CHAIYO AND TERESA CHAIYO DE §
GUAKIL; SARA GUINDIC DE HAIAT; DAVID §
HAZOURI NEME AND LUISA MARTHA §
ABDULNOUR HADDAD; CARLOS AUGUSTO §
HERNANDEZ GUERRERO; ANTONIO ASSAD §
KANAHUATI; BERTHA KLEIMAN; DANIEL §
KLEIMAN GUINDIC; M & S KUHN §
PARTNERSHIP, LTD.; R & C KUHN §
PARTNERSHIP, LTD.; ELISA JAFIF COHEN AND §
SERGIO ERNESTO KUSNER NOWOGRODZSKY; §

IN THE DISTRICT COURT



2009CI15137 -P00001

73 n al
JUDICIAL DISTRICT

BEXAR COUNTY, TEXAS

© 2009 PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP

ISAK LEMPERT; CAROL LOVIL; DAMIAN §
LYDER; JUANA INES PERDOMO DIAZ; MARIA §
NELINA COLLADO DE PEREZ, BERNARDO §
RAMON ANTONIO PEREZ COLLADO AND §
MARIANELA COVADONGA PEREZ COLLADO; §
LEONOR MARIA DEL CARMEN ZAMA §
SANCHEZ DE RODRIGUEZ, MARCOS GIL §
RODRÍGUEZ LEZAMA, ALEJANDRO ALFREDO §
RODRÍGUEZ LEZAMA; LABTEC INV. CORP.; §
LABORATORIO DE CONTOL A.R.J. SA DE CV; §
MARIA ISAACSON RODRIGUEZ AND GIL §
RODRIGUEZ ISAACSON; JUAN CARLOS §
SANCHEZ; MENAHEN SHUEKE ESSES AND §
JANETTE YAKIN DE SHUEKE; MARTHA §
GRACIELA SUAREZ Y COELLAR; SERGIO RAUL §
SUAREZ COELLAR; JACOBO TARTAKOVSKI §
AND THALIA UCHMANY; FRED TELLER AND §
SUE TELLER; EVA UCHMANY; GONZALO §
URQUIZA GONZALEZ COSIO AND MARIA §
TERESA CORREDOR ESNAOLA DE URQUIZA; §
CARMEN GONZALEZ COSSIO CASTANEDO DE §
URQUIZA, MARIA DEL CARMEN URQUIZA §
GONZALEZ DE COSSIO, ALFONSO URQUIZA §
GONZALEZ DE COSSIO, EDUARDO URQUIZA §
GONZALEZ DE COSIO, JUAN IGNACIO URQUIZA §
GONZALEZ COSIO, ANGEL URQUIZA §
GONZALEZ COSIO AND JAIME URQUIZA §
GONZALEZ COSIO; REBECA MORGENSTERN DE §
WAXTEIN, §
 §
         PLAINTIFFS §
 §
V. §
 §
ROBERT S. WINTER; BOWEN MICLETTE & §
BRITT, INC. F/K/A BOWEN, MICLETTE, §
DESCANT & BRITT, INC.; AMY S. §
BARANOUCKY; WILLIS OF COLORADO, INC.; §
WILLIS GROUP HOLDINGS, LTD.; RICARDO §
ABUABARA; JOHN BUZZELL; ABRAHAM §
DUBROVSKY; MIGUEL ANGEL GARCES; JANIE §
R. MARTINEZ; FABIO RESTREPO; ORESTE §
TONARELLI; ALEMAN, GALINDO, CORDERO & §
LEE TRUST (BVI) LIMITED; ALEMAN, §
GALINDO, CORDERO & LEE; JAIME ALEMAN; §
AND ANIBAL GALINDO, §
 §
         DEFENDANTS §
 §

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

---

### PLAINTIFFS' ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Barry and Carol Rupert, David Quintos, Diana Dimitrova Stoilova, Elizabeth Runkle and the other Plaintiffs named herein below complaining of Robert S. Winter; Bowen Miclette & Britt, Inc. f/k/a Bowen, Miclette, Descant & Britt, Inc.; Amy S. Baranoucky; Willis of Colorado, Inc.; Willis Group Holdings, Ltd.; Ricardo Abuabara; John Buzzell; Abraham Dubrovsky; Miguel Angel Garces; Janie R. Martinez; Fabio Restrepo; Oreste Tonarelli; Aleman, Galindo, Cordero & Lee Trust (BVI) Limited; Aleman, Galindo, Cordero & Lee; Jaime Aleman; and Anibal Galindo, and would respectfully show unto the Court the following:

1.     The Plaintiffs intend for discovery to be conducted under Level 3 pursuant to TEX. R. CIV. P. 190.4.

### I. Introduction

2.     Sir R. Allen Stanford built Stanford International Bank, Ltd. ("SIB") in to an $8 Billion dollar enterprise that attracted 30,000 investors from the United States, Mexico, Venezuela, and dozens of other countries.  On February 17, 2009, the Securities and Exchange Commission filed a lawsuit in the United States District Court for the Northern District of Texas that shut down SIB once and for all, calling it "a massive Ponzi scheme."  Many unanswered questions remain about how Stanford, a former gym operator from Mexia, Texas, came to operate a multi-headed hydra of a financial empire from the Caribbean island nation of Antigua and Barbuda, but the one thing that can be said for sure is that, much like a turtle sitting on top of a fence post, he did not get there all by himself.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

3.      SIB posed as a safe bank backed by well-placed insurance policies from reputable carriers conditioned on "stringent risk management reviews." This half-truth was an irresponsible statement made without proper disclosure, and it did even more damage than an out-and-out lie. SIB and its affiliated companies' promotional and marketing materials are filled with references to "depository insurance," "Excess FDIC Insurance," SIPC insurance, and banker's bond insurance. Robert Winter, Bowen, Miclette & Britt, Inc., Amy S. Baranoucky, the Willis Group and Willis of Colorado, (the "Insurance Defendants") took responsibility for "Insurance & Risk Management" for SIB and held themselves out to the depositors as the persons and entities responsible for performing those functions for SIB. For years, the Insurance Defendants consented, allowed and encouraged SIB to list them on SIB's publicly distributed Financial Statements as the providers of "Insurance & Risk Management" services for the banks. Each of them sent "Safety & Security" letters that led depositors to believe that there were insurance policies intended to protect the depositors' interests.  Instead, what little insurance coverage existed was there to protect the bank's shareholder R. Allen Stanford, his assets, and his close friends and advisors, not SIB's depositors.

4.      The Insurance Defendants were the ones responsible for placing that insurance coverage, and the Insurance Defendants represented to all of the SIB depositors and the Plaintiffs that the coverage had been placed.  The Insurance Defendants were responsible insurance professionals who provided professional services to SIB and who are liable to the Plaintiffs under the Texas Insurance Code and Colorado Consumer Protection Act for the roles they played at SIB. Each of the Insurance Defendants is liable to the Plaintiffs for the negligent misrepresentations they made about deposit insurance at SIB. The Defendants' misconduct in the business of insurance also

     © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

makes them liable to the Plaintiffs for violations of the Texas securities laws. The Defendants are responsible for the Plaintiffs' lost deposits in the amount of $79,136,477.35.

5.      R. Allen Stanford set up a number of trust companies such as Stanford Trust Company ("STC") and Stanford Trust Company, Ltd. ("STCL") doing business as Stanford Fiduciary Investor Services ("SFIS") (collectively the "Trust Companies") to serve as the trustee of trusts settled by some of the Plaintiffs and further lure depositors into purchasing Stanford CDs. These Trust Companies worked with a co-trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, and its leadership to promote the purchase of Stanford CDs. These corporate trustees and their employees sold unregistered, non-exempt securities when they were not securities dealers and sold the securities by means of untruths and ommissions. These trustee companies and their employees also profited from their service as trustees and breached fiduciary duties they owed to the settlor Plaintiffs. The Trust Company Employee Defendants, the Co-Trustee Defendants, and their principals and employees are liable to the Plaintiffs for damages and rescission in the amount of $23,150,242.77.

## II. Parties, Jurisdiction, and Venue

### II.a. – Plaintiffs

6.      Plaintiffs Barry Rupert and Carol Rupert are residents of Bexar County, Texas.

7.      Plaintiffs David Quintos and Diana Dimitrova Stoilova are residents of Mexico. These Plaintiffs are the settlors of the DQDD Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

8.      Plaintiff Elizabeth Runkle is a resident of Guadalupe County, Texas.

        © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

9.      Plaintiff Lionel Alessio Trias is the Co-Founder of Fundacion DIGSA. Fundacion DIGSA is a Panamanian Fundacion de Interes Privado. The Plaintiff is a resident of Florida.

10.      Plaintiffs Dan Auli Panos is a resident of Venezuela. Plaintiffs Victor Auli and Nayade Panos Peche are residents of Spain.

11.      Plaintiffs Ana Del Carmen Ballesteros Berrocal and Carmen Berrocal Mora are residents of Mexico.

12.      Plaintiffs Alberto Baron Adler, Ruth Baron Charney and Sylvia Charney de Baron are residents of Mexico. Ruth Baron Charney is a settlor of the TO Life Trust. The Trustee of these Trusts, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee (BVI) Trust, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, Ruth Baron Charney is the proper party to bring claims for losses to trust property.

13.      Plaintiffs Jose Beitman, Gregorio Beitman, Abraham Diamant, Aaron Marcos Diamant and Libe Diamant are residents of Mexico.

14.      Plaintiffs Neal Benner and Cecilia Benner are residents of Florida.

15.      Plaintiff Jorge Manuel Brenes Ramirez is a resident of Costa Rica. This Plaintiff is a settlor of the Brenes Murillo Trust and the Hermanos Brenes Murillo Trust. The Trustee of these Trusts, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee (BVI) Trust, are conflicted and incapable of bringing suit to enforce the rights of the trust estates. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

16.      Plaintiff German Bricio Arzubide is a resident of Mexico.

17.      Plaintiffs David Cabrera, Francisco Cabrera and Elizabeth Cabrera are residents of Venezuela.

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

18.     Plaintiff Frank Cammisano is a resident of Canada. This Plaintiff is the settlor of the Trinacria Trust and the CAMM International Trust. The Trustee of these Trusts, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estates. Thus, this Plaintiff is the proper parties to bring claims for losses to trust property.

19.     Plaintiffs Luis Charua Guindic and Adela Levy de Charua are residents of Mexico.

20.     Plaintiff Elias Charua Lladani is a resident of Mexico.

21.     Plaintiffs Moises Charua Guindic and Lilia Garcia Bustamante are residents of Mexico. The Charuas are the settlors of the Eltada Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, this Plaintiff is the proper party to bring claims for losses to trust property.

22.     Plaintiffs James Collins and Rebecca Collins are residents of Brazoria County, Texas.

23.     Plaintiff Paulo Costal is a resident of Mexico. This Plaintiff is the settlor of the Quinicio Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, this Plaintiff is the proper party to bring claims for losses to trust property.

24.     Plaintiffs Jorge Carlos Gonzalez de Cossio Septien, Maria Isabel Gonzalez de Cosio Septien, and Maria Guadalupe Septien Herran are residents of Mexico. These Plaintiffs are the settlors of the Ontario Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of

     © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

25.     Plaintiffs Arnoldo De Leon Sanchez, Luis Gonzaga De Leon Gonzalez; Luis Gonzaga De Leon Sanchez; Mariana De Leon Sanchez, and Jorge Antonio De Leon Sanchez (collectively "the De Leons") are residents of Mexico.

26.     Plaintiff Carlos Estrada, Jose Estrada, and Ricardo Estrada are residents of Mexico. These Plaintiffs are the settlors of the Champagnat, Loreto, and Zealand Trusts. The Trustee of these Trusts, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee (BVI) Trust, are conflicted and incapable of bringing suit to enforce the rights of the trust estates. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

27.     Plaintiffs Pilar Brun Loscertales, Angel Gonzalez de Cossio Castanedo, Maria del Pilar Gonzalez de Cosio Brun and Miguel Angel Gonzalez de Cossio Brun are residents of Mexico. These Plaintiffs are the settlors of the Mutus Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

28.     Plaintiffs Moises Guakil Chaiyo and Teresa Chaiyo de Guakil are residents of Mexico. These Plaintiffs are the settlors of the Vaquero Trust.

29.     Plaintiff Sara Guindic de Haiat is a resident of Mexico.

30.     Plaintiffs David Hazouri Neme and Luisa Martha Abdulnour Haddad are residents of Mexico. These Plaintiffs are the settlors of the Golden Wheat Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI)

        © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

31.    Plaintiff Carlos Augusto Hernandez Guerrero is a resident of Mexico.

32.    Plaintiff Antonio Assad Kanahuati is a resident of Mexico. This Plaintiff was the settlor of the now revoked Equilibre Trust. Stanford Trust Company Limited, and Aleman, Cordero, Galindo & Lee (BVI) Trust served as Trustee and Co-Trustee of the trust throughout the relevant portions of its existence.

33.    Plaintiff Bertha Kleiman is a resident of Mexico.

34.    Plaintiff Daniel Kleiman Guindic is a resident of Mexico.

35.    Plaintiff M & S Kuhn Partnership, Ltd. is a Texas limited partnership, residing at its principal place of business in San Patricio County, Texas.

36.    Plaintiff R & C Kuhn Partnership, Ltd. is a Texas limited partnership, residing at its principal place of business in Nueces County, Texas.

37.    Plaintiffs Elisa Jafif Cohen and Sergio Ernesto Kusner Nowogrodzsky are residents of Mexico.

38.    Plaintiff Isak Lempert is a resident of Argentina.

39.    Plaintiff Carol Lovil is a resident of Llano County, Texas.

40.    Plaintiff Damian Lyder is a resident of the Republic of Trinidad and Tobago.

41.    Plaintiff Juana Ines Perdomo Diaz is a resident of Mexico.

42.    Plaintiffs Maria Nelina Collado de Perez, Bernardo Ramon Antonio Perez Collado, and Marianela Covadonga Perez Collado are residents of Mexico.

    © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

43.    Plaintiffs Leonor Maria del Carmen Lezama Sanchez de Rodriguez, Marcos Gil Rodríguez Lezama, Alejandro Alfredo Rodríguez Lezama are residents of Mexico. Plaintiff Labtec Inv. Corp. is a corporation residing the British Virgin Islands.  Laboratorio de Control A.R.J. SA de CV is a resident of Mexico.

44.    Plaintiffs Maria Isaacson Rodriguez, and Gil Rodriguez Isaacson are residents of Mexico.

45.    Plaintiff Juan Carlos Sanchez is a resident of Hidalgo County, Texas.

46.    Plaintiffs Menahen Shueke Esses and Janette Yakin de Shueke are residents of Mexico.

47.    Plaintiff Martha Graciela Suarez Y Coellar is a resident of Mexico.  This Plaintiff is a settlor of the Martha Graciela Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate.  Thus, this Plaintiff is a proper party to bring claims for losses to trust property.

48.    Plaintiff Sergio Raul Suarez Coellar is a resident of Mexico.  This Plaintiff and Martha Graciela Suarez Y Coellar are the settlors of the Sergio Raul Suarez Coellar No. 2 Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate.  Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

49.    Plaintiffs Jacobo Tartakovski and Thalia Uchmany are residents of Mexico. These Plaintiffs are the settlors of the Banot Trust.  The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

50.     Plaintiffs Fred Teller and Sue Teller are residents of Harris County, Texas.

51.     Plaintiff Eva Uchmany is a resident of Mexico.

52.     Plaintiffs Gonzalo Urquiza Gonzalez Cosio and Maria Teresa Corredor Esnaola de Urquiza are residents of Mexico.

53.     Plaintiffs Carmen Gonzalez Cossio Castanedo de Urquiza, Maria del Carmen Urquiza Gonzalez de Cossio, Alfonso Urquiza Gonzàlez de Cossio, Eduardo Urquiza Gonzalez Cosio, Juan Ignacio Urquiza Gonzalez Cosio, Angel Urquiza Gonzalez Cosio and Jaime Urquiza Gonzalez Cosio are residents of Mexico. These Plaintiffs are the settlors of the SANCO Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, these Plaintiffs are the proper parties to bring claims for losses to trust property.

54.     Plaintiff Rebeca Morgenstern de Waxtein is a resident of Mexico. This Plaintiffs is the settlor of the Boichik Trust and the Regent Five Trust. The Trustee of this Trust, Stanford Trust Company Limited, and the Co-Trustee, Aleman, Cordero, Galindo & Lee Trust (BVI) Limited, are conflicted and incapable of bringing suit to enforce the rights of the trust estate. Thus, this Plaintiff is the proper party to bring claims for losses to trust property.

### II.b.1 – Insurance Defendants

55.     Defendant Robert S. Winter ("Winter") is an individual residing at 10015 Olympia, Houston, Harris County, Texas 77042. Winter be served with process by serving him at his usual place of abode, or wherever he may be found.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

56.     Defendant Bowen, Miclette & Britt, Inc. ("BMB") is a corporation organized under the laws of Texas, with its principal office at 1111 North Loop West, Suite 400, Houston, Harris County, Texas 77008. BMB may be served with process by servings its registered agent, CT Corporation System, at 350 North St. Paul Street, Dallas, Texas 75201.

57.   Defendant Amy S. Baranoucky ("Baranoucky") is an individual and, upon information and belief, a United States citizen, currently residing in 4295 Columbine Drive, Unit 8, Vail, Colorado 81657-4767. Baranoucky may be served with process by serving the Secretary of State by certified mail, return receipt requested, pursuant to TEX. R. CIV. P. 106 and 108a, and forwarded to Baranoucky's residence. This Court has jurisdiction over Ms. Baranoucky pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. Ms. Baranoucky purposefully availed herself of Texas law by obtaining a license to sell insurance in Texas and actually selling surplus lines policies in Texas. Ms. Baranoucky made numerous contacts with SIB's office in Texas and sent letters to Plaintiffs who were located in Texas as well as to Plaintiffs whom she contacted through agents in Texas. Her contacts were purposeful, consistent, and ongoing. She sought benefit, advantage or profit from these contacts because she sought to maintain her business relationships with SIB and provided information to the Plaintiffs for her own pecuniary benefit.

58.     Defendant Willis of Colorado, Inc., ("Willis of Colorado") is a corporation organized under the laws of Colorado. Willis of Colorado has engaged in business in the State of Texas, and maintains a designated agent for service of process in Texas. Willis may be served with process by servings its registered agent, CT Corporation System, at 350 North St. Paul Street, Dallas, Texas 75201. This Court has jurisdiction over Willis of Colorado pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042.

     © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

59.     Defendant Willis Group Holdings, Ltd., ("Willis Group") is a corporation organized under the laws of Bermuda, with its principal place of business at 51 Lime Street, London, EC3M 7DQ, England, in the United Kingdom. Willis has engaged in business in the State of Texas, but does not maintain a regular place of business or a designated agent for service of process in Texas.   Willis Group may be served with process by service on the Secretary of State. Willis Group may also be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 1965 U.S.T. 361, 658 U.N.T.S. 163 (1965).   Willis Group may be served via service on its registered agent in Bermuda: Appleby, Canon's Court, 22 Victoria Street, Hamilton, Bermuda. This Court has jurisdiction over Willis Group pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. Willis Group made numerous contacts with SIB's office in Texas and sent letters to Plaintiffs who were located in Texas as well as to Plaintiffs whom it contacted through agents in Texas. Its contacts were purposeful, consistent, and ongoing. It sought benefit, advantage or profit from these contacts because it sought to maintain its business relationships with SIB and provided information to the Plaintiffs for its own pecuniary benefit.

### II.b.2 – Stanford Employee Defendants

60.     Defendant Ricardo Abuabara is an individual residing in Harris County, Texas. Abuabara may be served with process by serving him at his usual place of abode at 5822 Lynnbrook Drive, Unit 64, Houston, Harris County, Texas 77057, or wherever else he may be found.

61.     Defendant John Buzzell is a resident of Louisiana. Buzzell engages or has engaged in business in this State, but does not maintain a regular place of business or a designated agent for service of process. This lawsuit arises out of the business done in this State and to which Buzzell

     © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

is a party. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE, substituted service on Buzzell should be made by serving the Secretary of State of Texas, Statutory Documents Section, Citations Unit, P. O. Box 12079, Austin, Texas 78711-2079, and forwarded to Buzzell's office at 10523 North Oak Hills Parkway, Suite A., Baton Rouge, Louisiana 70810. Service on Buzzell as described above can be effected by certified mail, return receipt requested.

62.     Defendant Abraham Dubrovsky is an individual residing at 14006 Oakhill Way, San Antonio, Bexar County, Texas 78231. Dubrovsky may be served with process by serving him at his usual place of abode, or wherever he may be found.

63.     Defendant Miguel Angel Garces is a resident of Missouri. Garces engages or has engaged in business in this State, but does not maintain a regular place of business or a designated agent for service of process. This lawsuit arises out of the business done in this State and to which Garces is a party. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE, substituted service on Buzzell should be made by serving the Secretary of State of Texas, Statutory Documents Section, Citations Unit, P. O. Box 12079, Austin, Texas 78711-2079, and forwarded to Garces' office at 12555 Manchester Road, St. Louis, Missouri 63131. Service on Garces as described above can be effected by certified mail, return receipt requested.

64.     Defendant Janie R. Martinez, upon information and belief, is an individual residing in Bexar County, Texas. Martinez may be served with process by serving her at her usual place of business, 8000 IH-10 West, San Antonio, Bexar County, Texas 78230, or wherever else she may be found.

65.     Defendant Fabio Restrepo is an individual, upon information and belief, residing in Harris County, Texas. Restrepo may be served with process by serving him at his usual place of

        © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

abode at 9519 Fenchurch Drive, Spring, Harris County, Texas 77379, or wherever else he may be found.

66.     Defendant Oreste Tonarelli is a resident of Florida. Tonarelli engages or has engaged in business in this State, but does not maintain a regular place of business or a designated agent for service of process. This lawsuit arises out of the business done in this State and to which Tonarelli is a party. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE, substituted service on Tonarelli should be made by serving the Secretary of State of Texas, Statutory Documents Section, Citations Unit, P. O. Box 12079, Austin, Texas 78711-2079, and forwarded to Tonarelli's place of abode at 8249 SW 84th Terrace, Coral Gables, Florida 33143. Service on Tonarelli as described above can be effected by certified mail, return receipt requested.

### II.b.3 Co-Trustee Defendants

67.     Defendant Aleman, Galindo, Cordero & Lee Trust (BVI) Limited (hereinafter "Aleman Trust Company") is a British Virgin Islands private trust company, or in the alternative, is an entity organized under the laws of the British Virgin Islands capable of bringing suit and being sued in its own name, with its principal place of business in the British Virgin Islands. This Court has jurisdiction over Aleman Trust Company pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. Aleman Trust Company is subject to personal jurisdiction in this Court to hear a suit related to its liability for losses suffered by these Stanford Depositors. Aleman Trust Company's specific contacts with SIB and STC in Texas and its service as Co-Trustee of certain trusts settled by the Plaintiffs[1] were purposeful, consistent and ongoing, and it sought

---

[1] TO Life Trust (settled by the Baron Plaintiffs); Brenes Murillo Trust and Hermanos Brenes Murillo Trust (settled by the Brenes Plaintiffs); Trinacria Trust and CAMM International Trust (settled by Frank Cammisano); Eltada Trust (settled by the Charua Plaintiffs); Quinicio Trust (settled by Paulo Costal); Ontario Trust (settled by the De Cossio and Septien Plaintiffs); Champagnat, Loreto, and Zealand Trusts (settled by the Estrada Plaintiffs); Mutus Trust (settled by the Gonzalez de Cossio Plaintiffs); Vaquero Trust (settled by the Guakil Plaintiffs); Golden Wheat Trust (settled by the Hazouri Plaintiffs); DQDD Trust (settled by the Quintos Plaintiffs); Martha Graciela Trust (settled by certain Suarez

benefit, advantage and profit when it was paid fees to serve as Co-Trustee of these trusts. The situs of administration of certain trusts settled by the Plaintiffs of which Aleman Trust Company was Co-Trustee was in Texas, and the remaining trusts settled by the Plaintiffs were largely managed from Texas in coordination with Aleman Trust Company. Aleman Trust Company contracted with one or more Texas residents to perform part of a contract in Texas when it took on the duty to make reasonable inquiry in to the affairs of Stanford International Bank. By breaching these trust contracts, Aleman Trust Company conducted business in Texas. Aleman Trust Company has engaged in business in the State of Texas, but does not maintain a regular place of business or a designated agent for service of process in Texas. Aleman Trust Company may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which was signed by the United Kingdom and made applicable by that country to the British Virgin Islands. Aleman Trust Company may be served by any method authorized under the Hague Convention, the laws of Texas, and the laws of the British Virgin Islands, including service upon the appropriate officer of Aleman Trust Company at its principal place of business at 3rd Floor, Geneva Place, 333 Waterfront Drive, P. O. Box 71 Road Town, Tortola, British Virgin Islands. Service upon Aleman Trust Company may also be effected by service upon Gabriella Conte, Registered Agent for Aleman Trust Co., at P. O. Box 3175, Road Town, Tortola, British Virgin Islands. Service upon Aleman Trust Company may also be effected by service upon Jaime Aleman or Anibal Galindo wherever they may be found.

68.     Defendant Aleman, Galindo, Cordero & Lee ("Aleman Firm") is an entity or association whose principle place of business is in the Republic of Panama. Upon information and

---

Plaintiffs); Sergio Raul Suarez Coellar No. 2 Trust UST (settled by certain Suarez Plaintiffs); Banot Trust (settled by the Tartakovski Plaintiffs); Sanco Trust (settled by certain Urquiza Plaintiffs); Boichik Trust and Regent Trust (settled by Rebecca Morgenstern de Waxtein).

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

belief, the Aleman Firm is a general partnership. This Court has jurisdiction over the Aleman Firm pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. The Aleman Firm made numerous contacts with Plaintiffs in Texas. Its contacts were purposeful, consistent, and ongoing. The firm sought benefit, advantage or profit from these contacts because it obtained pecuniary benefit from serving as trustee for trusts settled by the Plaintiffs. The firm also worked with others to commit torts in Texas in whole or in part. The Aleman Firm has engaged in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE, substituted service should be made on the Aleman Firm by serving the Secretary of State, Statutory Documents Section, Citations Unit, P.O. Box 12079, Austin, Texas 78711-2079, and forwarded to the Aleman Firm's principal place of business at 2nd Floor, East 53rd Street, Ur. Marbella, P. O. Box 0819-09132, Panama City, Republic of Panama. Service on the Aleman Firm can be effected pursuant to methods permitted by the Inter-American Convention on Letters Rogatory and Additional Protocol, or by any other method permitted under the laws of the State of Texas and the Republic of Panama. The Aleman Firm may also be served by effecting service on Jaime Aleman or Anibal Galindo in the manner described below. These individuals are the general partners, officers, managers, agents, or other appropriate persons to receive service on behalf of the Aleman Firm.

68.    Defendant Jaime Aleman is an individual residing in Panama City, Panama. Mr. Aleman is licensed to practice law in the United States, and is a member of the bar of the District of Columbia. This Court has jurisdiction over Aleman pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. Aleman made numerous contacts with Plaintiffs in Texas. His contacts were purposeful, consistent, and ongoing. He sought benefit, advantage or

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

profit from these contacts because he obtained pecuniary benefit from the service of his associated entities, Aleman Trust and the Aleman Firm, who served as trustee for trusts settled by the Plaintiffs. He also worked with others to commit torts in Texas in whole or in part. Aleman has engaged in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE, substituted service should be made on Aleman by serving the Secretary of State, Statutory Documents Section, Citations Unit, P. O. Box 12079, Austin, Texas 78711-2079, and forwarded to Aleman's usual place of business at 2nd Floor, East 53rd Street, Ur. Marbella, P. O. Box 0819-09132, Panama City, Republic of Panama. Service on Aleman can be effected pursuant to methods permitted by the Inter-American Convention on Letters Rogatory and Additional Protocol, or by any other method permitted under the laws of the State of Texas and the Republic of Panama. Service upon Aleman may also effected by serving him by mail at the address he maintains with the District of Columbia Bar Association at P. O. Box 0819-09132, Panama City, Panama.

70.     Defendant Anibal Galindo is an individual residing in Panama City, Panama. This Court has jurisdiction over Galindo pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042. Galindo made numerous contacts with Plaintiffs in Texas. His contacts were purposeful, consistent, and ongoing. He sought benefit, advantage or profit from these contacts because he obtained pecuniary benefit from the service of his associated entities, Aleman Trust and the Aleman Firm, who served as trustee for trusts settled by the Plaintiffs. He also worked with others to commit torts in Texas in whole or in part. Galindo has engaged in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process in Texas. Therefore, under Section 17.044 of the TEX. CIV. PRAC. & REM. CODE,

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

substituted service should be made on Galindo by serving the Secretary of State, Statutory Documents Section, Citations Unit, P. O. Box 12079, Austin, Texas 78711-2079, and forwarded to Galindo's usual place of business at 2nd Floor, East 53rd Street, Ur. Marbella, P. O. Box 0819-09132, Panama City, Republic of Panama. Service on Galindo can be effected pursuant to methods permitted by the Inter-American Convention on Letters Rogatory and Additional Protocol, or by any other method permitted under the laws of the State of Texas and the Republic of Panama.

### II.c – Subject Matter Jurisdiction

71.     This Court has jurisdiction to hear this case because the Plaintiffs request damages and remedies in excess of the minimal jurisdictional limits of the Court.

72.     This Court has jurisdiction to hear this case pursuant to TEX. PROP. CODE § 115.001 because this is an action concerning trusts settled by the Plaintiffs and the rights of the Settlors and Beneficiary Plaintiffs with respect to those trusts. This case seeks to remove a trustee and to appoint a successor trustee and seeks determinations of the powers, responsibilities, duties and liabilities of a trustee.

73.     This Court has jurisdiction to hear these non-removable claims made under the SECURITIES ACT OF 1933 pursuant to 15 U.S.C. § 77v (2006) ("[...]no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.").

### II.d – Venue

74.     Venue for the suits against Defendants Dubrovsky and Martinez is proper in Bexar County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2) because those Defendants are natural persons residing in Bexar County.

75.     Venue for the suits of Plaintiffs David Quintos and Diana Dimitrova Stoilova is proper in Bexar County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because all or a substantial part of the acts or omissions giving rise to Quintos' and Dimitrova's claims occurred in Bexar County.

76.     Venue for the suits of Plaintiffs Barry and Carol Rupert is proper in Bexar County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(4) because the Ruperts were residents of Bexar Countyat the time this cause of action accrued, and Defendants Willis Group, Willis of Colorado, Aleman Trust Company, and the Aleman Firm are not natural persons, and they have no principal offices in this state.

77.     Venue for the suits of the Plaintiff settlors of the twenty aforementioned trusts is proper in Bexar County pursuant to TEX. PROP. CODE § 115.002. The Trustee of each of these trusts was Stanford Trust Company or Stanford Trust Company Limited d/b/a Stanford Fiduciary Investor Services, or some other affiliated entity, which were corporate trustees. Stanford Fiduciary Investor Services maintained an office in San Antonio at the Forum Building, 8000 IH-10 West, near the corner of IH-10 and Callaghan Road, in Bexar County, Texas. Defendants Dubrovsky and Martinez worked from that office. This Bexar County office was the situs of administration of the trusts settled by the Plaintiffs, and thus Bexar County is the proper place of venue for those suits brought pursuant to TEX. PROP. CODE § 115.001.

78.     Venue for the suits of Plaintiffs Elizabeth Runkle and Carol Lovil is proper in Bexar County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003. Runkle's home is in Cibolo, Guadalupe County, Texas lies a half-hour drive from the Bexar County courthouse. Plaintiff Lovil is a resident of Kingsland, Llano County, Texas.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

79.    Venue for the suits of those remaining above-named Plaintiffs is proper in Bexar County pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003. Joinder in the suits of each of those remaining above-named Plaintiffs named to the suits of the Ruperts, Runkle, Quintos, Dimitrova, and the settlor Plaintiffs is proper under TEX. R. CIV. P. 40 because those Plaintiffs assert a right to relief jointly, severally, or in the alternative arising out of the same series of transactions or occurrences, and common questions of law and fact will arise in the action. Maintaining venue in Bexar County as to those remaining above-named Plaintiffs will not unfairly prejudice any party because all the Defendants are already subject to venue in Bexar County for a suit alleging common questions of law and fact. There is an essential need for those remaining above-named Plaintiffs to have their claims tried in Bexar County. Bexar County is a fair and convenient venue for those remaining above-named Plaintiffs and for all persons against whom the suit is brought.

### III. Facts

*Stanford International Bank*

80.    The Plaintiffs all made deposits at SIB and purchased certificates of deposit ("Stanford CDs"). At the time SIB was placed in to receivership, the bank had taken in $7.2 Billion in deposits from over 20,000 investors. These Plaintiffs lost $79,136,477.35 of those deposits.

81.    Stanford CDs were carefully crafted to seem like normal financial instruments, bearing favorable but not unreasonable rates of return and a high level of security. True and correct copies Stanford CDs issued to Plaintiffs Dan Auli and Nayade Peche are attached hereto as Exhibit "A-1." Most Stanford CDs purchased by the Plaintiffs bore stated annual rates of return of five to six percent interest, and came with typical restrictions one would expect to find on a bank CD, such as penalties for early withdrawal.

    © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

82.    To market the Stanford CDs, the bank produced elaborate marketing materials including websites, financial statements, and prospectuses.  A true and correct copy of one such financial statement produced by SIB is attached hereto as Exhibit "A-2."  R. Allen Stanford built a corresponding network of financial companies including Stanford Financial Group, a registered broker-dealer, Stanford Trust Company, and other companies offering financial services, products, and investments to expand the scope of SIB and the Stanford CD enterprise.

83.    In some cases, Stanford hired stockbrokers and financial advisors from other, more established firms.  These brokers brought their existing clients with them to Stanford, where they sold clients the Stanford CDs without disclosing that the brokers would receive commissions of as much as 1, 2, or even 3 percent.  In other cases, new SIB customers such as the De Leons were wined and dined while being flown at SIB's expense to meet with SIB executives at lavishly furnished offices.

84.    Many of the Plaintiffs purchased Stanford CDs through their accounts at Stanford Trust Company ("STC"), which also did business under the name Stanford Fiduciary Investor Services (and other similar names).  In San Antonio, Defendants Dubrovsky and Martinez worked for Stanford Fiduciary Investor Services where they focused on selling Stanford CDs to Spanish-speaking depositors.  These trust companies did little, if anything, other than promote the sale of Stanford CDs.

85.    The Trust Companies are now in receivership along with SIB, the broker-dealer and other Stanford companies.  Thus, the trust companies are incapacitated to serve as trustees, and they are unable to prosecute claims related to the Stanford CDs on behalf of their trusts because their role in the sale of CDs gives rise to a conflict.

    © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

86.   STC and the other trustees were not licensed sellers of securities. Thus, each sale of a Stanford CD by STC and the other trustees was an unlawful sale.

87.   SIB made a number of vital statements to depositors about the presence of insurance. First, SIB held out to the world year after year that its deposits were secure and that insurance protected the deposits. Second, SIB and the Defendants Winter, BMB, Baranoucky, Willis of Colorado, and Willis Group claimed that the bank underwent "stringent risk management reviews." This statement was patently false. Third, SIB used its website, financial statements, and prospectuses to publish the names of its risk management and insurance professionals thousands of times over: Robert Winter, Bowen, Miclette & Britt, Inc., Amy S. Baranoucky, Willis of Colorado, and Willis Group.

### The Insurance Professionals

88.   BMB and Robert Winter served SIB as insurance brokers and risk management advisors from as early as the mid-1990s and until 2002 or later. They not only placed coverage for SIB and consulted for SIB on risk management strategy, they also published information about this insurance coverage to the Plaintiffs by sending out thousands of "Safety and Security Letters." True and correct copies of two such letters sent by Winter and BMB are attached hereto as Exhibits "B-1" and "B-2."

89.   Willis Group, Willis of Colorado, and Amy Baranoucky undertook a similar role for SIB, serving as insurance brokers and risk managers from 2002 through 2005, and sending out similar letters. A true and correct copy of one letter sent by Willis Group, Willis of Colorado, and Baranoucky is attached hereto as Exhibit "B-3."

90.   The Safety and Security Letters are a real piece of work. The letters sent on BMB stationary were signed by insurance broker and BMB employee "Robert S. Winter, Financial

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

Specialist" at a firm which purported to offer services in "Insurance/Bonds/Risk Management." The letters say that based on Winter and BMB's knowledge, SIB was composed of "first class business people." The letters specifically describe up to four different types of insurance coverage placed at well-known underwriters such as Lloyd's of London. The letters describe risk management reviews (sometimes described as "stringent" risk management reviews) by an outside firm, and the letters make it clear that the risk management reviews were material to obtaining the represented coverage.

91.     Remarkably, the Baranoucky and Willis letters use the same language as the BMB and Winter letters. Baranoucky and Willis' letters continued to tout the benefits of "stringent risk management reviews" and the "first class business people" at SIB.

92.     The Safety and Security letters were a *quid pro quo* given by Willis & BMB to SIB in exchange for the privilege of selling insurance to Stanford and his entities and collecting a handsome commission. BMB and Willis knew that SIB and Stanford used the Safety and Security letters to ensure that a critical mass of depositors would keep their monies with SIB. The Safety and Security letters were either addressed to individual depositors or distributed *en mass* to the remaining depositors. The Safety and Security letters were a part of the marketing campaign used to give SIB credibility while it continued to take in new deposits and promote the classic Ponzi scheme.

*The Business of Insurance*

93.     The Insurance Defendants engaged in conduct constituting the business of insurance in Texas. Among other things, the Insurance Defendants:

      a.   made and proposed to make insurance contracts;

      b.   made and proposed to make guaranty or surety contracts;

      c.   took or received insurance applications;

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

    d.  received premiums and commissions;

    e.  issued and delivered insurance contracts to residents of this state;

    f.  assisted insurers and persons in soliciting, negotiating, procuring and effectuating insurance and renewals of insurance;

    g.  assisted insurers and persons in disseminating information relating to coverage;

    h.  assisted insurers and persons in transacting a matter after the effectuation of the contract; and

    i.  did and proposed to do insurance business that was in substance equivalent to conduct described at TEX. INS. CODE § 101.051(b)(1)-(8) in a manner designed to evade statutes relating to insurance.

This conduct in the business of insurance was part-and-parcel of the Insurance Defendants' misrepresentations to the Plaintiffs. Thus, each mailing of a Safety and Security letter by the Insurance Defendants to a Plaintiff, each failure to correct a misstatement which the Insurance Defendants had a duty to correct, and many other acts by the Insurance Defendants were also conduct in the business of insurance.

    94.    The Safety and Security letters misrepresented the benefits of the insurance policies held by SIB. The letters were sent to potential depositors to encourage them to leave their money at SIB; the insurance professionals who sent these letters intended for potential depositors to believe that these policies would protect the depositors. In fact, the policies protected SIB and its sole shareholder, R. Allen Stanford.

    95.    The Safety and Security letters used a name or title of an insurance policy that misrepresented the true nature of the policy. The letters that describe the Bankers Blanket Bond, Excess FDIC coverage, and Depository Insolvency coverage named those policies in such a way as to lead the Plaintiffs and other depositors to believe that their deposits at SIB, not SIB's deposits at other banks, would be covered. Furthermore, use of the name "Excess FDIC" was a

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

misrepresentation because there was no FDIC coverage in place, and use of the name "Excess FDIC" implied that there was FDIC coverage, when in fact there was none.

96.    The Safety and Security letters contained untrue, deceptive, and misleading representations regarding SIB, the Insurance Defendants, and the business of insurance. The Safety and Security letters made untrue statements of material fact. Among other things, SIB was not made up of what any reasonable person would call "first class business people." There were no risk management reviews, or in the alternative, what reviews there may have been were far from "stringent."

97.    Baranoucky, Willis of Colorado, and Willis Group sent out their letters from an office in Colorado. By sending out these letters, they engaged in deceptive practices as part of their business, vocation, and occupation. The letters impacted the public as customers of Baranoucky, Willis of Colorado, and Willis Group's goods and services, namely financial products and Stanford CDs backed by their insurance products.

98.    The risk management reviews referred to in the Insurance Defendants' letters were presumably the same ones performed by Stogniew and Associates that SIB described in its financial statements. *See* 2007 SIB Financial Statement, footnote 2.6 page 13, Exhibit "A-2." SIB and the Insurance Defendants wanted the Plaintiffs to believe that the risk management reviews, internal controls, and insurance program were "reasonable," "minimize[d] the bank's exposure to loss," and were without "material weakness." Each of these factual statements about the reviews was false. Furthermore, Stogniew's last reviews of the bank were conducted in 2003. Even if the reviews had been adequate to back up SIB and the Insurance Defendants' claims, they were so out-of-date as to be worthless.

*Professional Duty*

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

99.     Professionals such as the Defendants owe a duty to non-clients who could be harmed by their shoddy work. All the Defendants were working as professionals when they sent Safety and Security letters to the Plaintiffs, knowing that the Plaintiffs would receive the letters and rely on the representations contained therein when considering whether or not to purchase Stanford CDs. The letters gave false information about many things, most notably the quality and existence of the risk management reviews and the character of the business people at SIB. This information was given for the guidance of the Plaintiffs. The Defendants did not exercise reasonable care when they failed to establish the truth of their statements about the risk management reviews, among other things. The Plaintiffs relied upon the Defendants' negligent misrepresentations when deciding to deposit money at SIB, and now their entire deposits have been lost. Winter and Baranoucky were acting in the course and scope of their duties as employees at BMB, Willis of Colorado, and Willis Group when they made their misrepresentations that harmed the Plaintiffs while earning handsome commissions for their employers and themselves.

100.     Having represented to the Plaintiffs and other depositors that certain insurance coverage would be in effect and having worked closely with SIB, the Insurance Defendants had a duty to place, effect, maintain, or renew insurance coverage that would protect the Plaintiffs' deposits. The Insurance Defendants failed to place, effect, maintain, or renew this coverage.

101.     The Insurance Defendants had a duty to service the insurance and risk management accounts at SIB for policies related to the Stanford CDs. The Insurance Defendants should have serviced their insurance and risk management accounts at SIB by advising SIB on appropriate risk management policies, by advising SIB on appropriate controls to retain the benefits of insurance coverage, and by monitoring SIB and assisting SIB in monitoring compliance with these policies. The Insurance Defendants did not undertake appropriate action to inform or advise the appropriate

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

SIB personnel of their obligations under the policies or to facilitate communication between SIB and its insurers. The Insurance Defendants failed to service their accounts with SIB by failing in their obligations to assist SIB in filing claims against its insurer related to the Stanford CDs.

### Stanford CDs and Securities Law

102.    The Stanford CDs were securities within the meaning of Texas and federal law because the CDs were instruments that represented an interest in the assets, profits, or earning of SIB. Unlike regular bank CDs which are subject to regulation by the Federal Deposit Insurance Corporation, the Stanford CDs were not subject to regulation under any other comprehensive scheme.

103.    The Stanford CDs were unregistered, non-exempt securities. SIB submitted a "Notice of Sale of Securities Pursuant to Regulation D" with the Securities and Exchange Commission. SIB also filed these notices with the Texas State Securities Board. These notices purported to exempt the Stanford CDs from the registration requirements of both federal and Texas law. In fact, SIB never complied with the requirements of the SEC's Regulation D, and these Notices of Sale were merely sham filings.

104.    The Trust Company Employee Defendants were sellers of the Stanford CDs.

105.    SIB used the professional services of the Insurance Defendants as a vital link in the chain to sell the Stanford CDs to the Plaintiffs. Thus the Defendants were sellers of securities within the meaning of the securities laws.

106.    The representations that the Defendants made about insurance coverage were material to the Plaintiffs' purchase of the Stanford CDs. These representations were included in generally disseminated prospectuses, brochures, and financial statements; the Plaintiffs may be presumed to have relied upon the representations in these generally disseminated items, and they did, in fact,

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

so rely.  As insurance brokers and risk management consultants for SIB, the Defendants undertook

to procure insurance for SIB.  The Defendants likewise represented to the Plaintiffs that they had

procured and renewed insurance policies for SIB, and that those policies were appropriate for the

coverage represented to the Plaintiffs.

*The Co-Trustee Defendants*

107.    Aleman Trust Company, the Aleman Firm, Jaime Aleman and Anibal Galindo

(the "Co-Trustee Defendants") all played critical roles in the sale of Stanford CDs to the Plaintiffs.

Aleman Trust Company served as co-trustee on many trusts for which Stanford Trust Company

Limited d/b/a Stanford Fiduciary Investor Services and Stanford Trust Company, Inc. served as

trustee.  A true and correct copy of the DQDD trust application is attached hereto as Exhibit "C."

While serving Aleman Trust Company was serving as co-trustee of these trusts, the Aleman Firm

(whose partners appear to be the principals of Aleman Trust Company) continued to represent SIB

and its affiliates, including Stanford Bank Panama.  Thus, the Aleman Trust Company was taking

on fiduciary duties to the Plaintiffs which necessarily required it to cast the jaundiced eye and

scowling mien of a fiduciary upon the clients of the Aleman Firm; this could not be done, and in fact,

was not done.  Jaime Aleman and Anibal Galindo personally oversaw these series of acts and

omissions, and in many cases, personally executed trust documents.

108.    By order of the United States District Court for the Northern District of Texas,

Stanford Trust Company resigned or was removed as fiduciary for all "STC fiduciary accounts,"

"upon the appointment of a successor fiduciary."[2]    Other designated co-trustees such as

---

[2] *Securities and Exchange Commission v. Stanford International Bank, et. al.*, No. 3:09-cv-00298 (N.D. Tex., Apr. 23, 2009)(order establishing, inter alia, the resignation of Stanford Trust Company as fiduciary).

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

Aleman, Cordero, Galindo & Lee Trust ("Aleman") are incapable of representing the interests of the trust and its beneficiaries.

109.    Aleman Trust Company owed fiduciary duties of loyalty and care to the trusts settled by the Plaintiffs and their beneficiaries.  Aleman Trust Company breached its duty of loyalty by working harder to maintain its profitable relationship with SIB and STC than to look after the interests of the trusts and their beneficiaries.  Aleman Trust Company breached its duty of care by failing to make a reasonably prudent investigation of the affairs, assets, and liabilities of SIB, especially in light of the large amount of business it did with SIB.  As co-trustee, Aleman Trust Company had an obligation to see that STC would not commit a serious breach of trust, and an obligation to compel STC to redress serious breaches of trust.

110.    Aleman Trust Company made profits through or arising out of the administration of the trust.  The trusts suffered losses resulting from the trustee's failure to perform its obligations as trustee.

111.    Aleman Trust Company, the Aleman Firm, Jaime Aleman, and Anibal Galindo were essential links in the chain that lead to the sale of Stanford CDs.  None of these Co-Trustee Defendants were licensed to sell securities.  These Co-Trustee Defendants made false representations of material fact and omitted to state facts necessary to make other statements not misleading under the circumstances in which they were made.

112.    Had the Co-Trustees not committed breaches of trust, the trusts settled by the Plaintiffs would have accrued profits.

### Rescission, Demand, Notice, Discovery, and Conditions Precedent

113.    The Plaintiffs have tendered the Stanford CDs to the Defendants in rescission.  The tender has been refused.  Alternatively, tender would have been a fruitless exercise.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

114.    The Plaintiffs have made demand on the Defendants for their damages arising from the purchase of Stanford CDs. Alternatively, demand would have been a fruitless exercise.

115.    The Plaintiffs have given the Defendants sixty days' notice of their claims pursuant to all applicable statutes.

116.    The Plaintiffs did not discover (and the Plaintiffs could not have, with exercise of reasonable diligence, discovered) the nature of the injuries caused by the Defendants until February 17, 2009 when the Securities and Exchange Commission filed suit against R. Allen Stanford and SIB.

117.    All conditions precedent to recovery have occurred, or their occurrence has been waived.

## IV. Causes of Action

### IV.a. Violations of the Texas Insurance Code

**Count 1 – Misrepresenting the benefits of insurance policies – TEX. INS. CODE § 541.051(1).**

118.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 117.

119.    The Insurance Defendants committed unfair or deceptive acts or practices in the business of insurance when the Insurance Defendants made, issued, and circulated statements misrepresenting the benefits or advantages promised by an insurance policy. In the alternative, the Insurance Defendants caused such statements to be made, issued or circulated.

120.    The Insurance Defendants' unfair or deceptive acts and practices were a producing cause of actual damages to the Plaintiffs.

121.    The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained by the Plaintiffs in the amount of $79,136,477.35.

122.    The Insurance Defendants knowingly committed the complained of acts.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

123.    The Insurance Defendants are liable to the Plaintiffs for treble damages.

**Count 2 –  Misrepresenting  the  name  or  title  of  insurance  policies   – TEX. INS. CODE § 541.051(4).**

124.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 123.

125.    The Insurance Defendants committed an unfair or deceptive act or practice in the business of insurance when the Insurance Defendants used a name or title of a policy or class of policies that misrepresented the true nature of the policy or class of policies.

126.    The Insurance Defendants' unfair or deceptive acts and practices were a producing cause of actual damages to the Plaintiffs.

127.    The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained by the Plaintiffs in the amount of $79,136,477.35.

128.    The Insurance Defendants knowingly committed the complained of acts.

129.    The Insurance Defendants are liable to the Plaintiffs for treble damages.

**Count 3 – False information and advertising – TEX. INS. CODE § 541.052.**

130.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 129.

131.    The Insurance Defendants committed an unfair or deceptive act or practice in the business of insurance when the Insurance Defendants made, published, disseminated, circulated, and placed  before  the  public  certain  advertisements,  announcements,  and  statements. These advertisements, announcements, and statements contained untrue, deceptive and misleading assertions, representations and statements regarding the business of insurance and regarding a person in the conduct of the person's insurance business.  In the alternative, the Insurance Defendants caused such statements to be published, disseminated, circulated, and placed before the public.

       © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

132. The Insurance Defendants' unfair or deceptive acts and practices were a producing cause of actual damages to the Plaintiffs.

133. The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained by the Plaintiffs in the amount of $79,136,477.35.

134. The Insurance Defendants knowingly committed the complained of acts.

135. The Insurance Defendants are liable to the Plaintiffs for treble damages.

**Count 4 – Misrepresentation of a policy of insurance – TEX. INS. CODE § 541.061.**

136. The Plaintiffs reallege and the allegations of paragraphs 1 – 135.

137. The Insurance Defendants committed an unfair or deceptive act or practice in the business of insurance by misrepresenting insurance policies when the Insurance Defendants made untrue statements of material fact, failed to state material facts necessary to make other statements not misleading considering the circumstances under which the statements were made, and making statements in a manner that would mislead a reasonably prudent person to a false conclusion of material fact.

138. The Insurance Defendants' unfair or deceptive acts and practices were a producing cause of actual damages to the Plaintiffs.

139. The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained by the Plaintiffs in the amount of $79,136,477.35.

140. The Insurance Defendants knowingly committed the complained of acts.

141. The Insurance Defendants are liable to the Plaintiffs for treble damages.

    © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

*IV.b. – Colorado Consumer Protection Act*

**Count 5 – Violation of the Colorado Consumer Protection Act – COL. REV. STAT. 6-1-101,**
**et seq.**

142.   The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 141.

143.   Amy Baranoucky, Willis of Colorado, and Willis Group engaged in deceptive trade practices.

144.   These practices occurred in the course of Baranoucky, Willis of Colorado, and Willis Groups' business, vocation, or occupation.

145.   These practices significantly impacted the public as actual or potential customers of Baranoucky, Willis of Colorado, and Willis Groups' goods, services, or property.

146.   The Plaintiffs have suffered injury in fact to their legally protected interests.

147.   Baranoucky, Willis of Colorado, and Willis Groups' deceptive practices caused the Plaintiffs' injuries.  These Defendants' acts and omissions were links in a chain that lead the to Plaintiffs' injuries.  There was a sufficient causal nexus between the Defendants' acts and omissions and the Plaintiffs' injuries despite the intervening acts of others.

148.   Baranoucky, Willis of Colorado, and Willis Group are liable to the Plaintiffs for their damages in the amount of $79,136,477.35.

149.   Baranoucky, Willis of Colorado, and Willis Group are liable to the Plaintiffs for treble damages.

*IV.c. – Common Law Claims*

**Count 6 – Negligent Misrepresentation.**

150.   The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 149.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

151.    The Insurance Defendants made representations to the Plaintiffs in the course of the Insurance Defendants' business or in one or more transactions in which the Defendants had an interest.    The Insurance Defendants made statements to the Plaintiffs regarding SIB and Stanford CDs.  The Insurance Defendants either intended for the Plaintiffs to benefit from this information, or the Insurance Defendants knew or reasonably should have known that the Plaintiffs would receive the information.

152.    The Insurance Defendants supplied false information for the guidance of others.

153.    The Insurance Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

154.    The Plaintiffs justifiably relied on the representations.

155.    The Insurance Defendants' negligent misrepresentations proximately caused the Plaintiffs' injuries.

156.    The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained by the Plaintiffs in the amount of $79,136,477.35.

157.    Defendants BMB, Willis of Colorado, and Willis Group are vicariously liable for all negligent misrepresentations made by their employees, Defendants Winter and Baranoucky.

**Count 7 – Negligent Procurement and Negligent Omission.**

158.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 157.

159.    The Insurance Defendants undertook to procure insurance policies for SIB, including third-party policies of insurance for the benefit of the Plaintiffs.

160.    The Insurance Defendants had a duty to maintain or renew insurance for SIB, including third-party policies of insurance for the benefit of the Plaintiffs.

   © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

161.    The Insurance Defendants did not exercise reasonable care, competence, or diligence

in procuring the policies, or the Insurance Defendants did not exercise reasonable care, competence,

or diligence in renewing and maintaining those policies.

162.    The Plaintiffs justifiably relied on the Insurance Defendants' representations that

appropriate insurance policies had been procured or that such policies had been renewed or

maintained.

163.    The Insurance Defendants' failure to use reasonable care, competence, or diligence

in procuring third-party policies proximately caused the Plaintiffs' injuries.  In the alternative, the

Insurance Defendants' failure to use reasonable care, competence, or diligence in renewing or

maintaining third-party policies proximately caused the Plaintiffs' injuries.

164.    The Insurance Defendants are liable to the Plaintiffs for the actual damages sustained

by the Plaintiffs in the amount of $79,136,477.35.

**Count 8 – Failure to service policies.**

165.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 164.

166.    The Insurance Defendants had an obligation to service the insurance policies held by

its customer SIB.

167.    The Insurance Defendants failed to service those policies.

168.    The Insurance Defendants' failure to service those policies caused the Plaintiffs to

suffer losses.

169.    The Insurance Defendants are liable to the Plaintiffs for their losses and damages in

the amount of $79,136,477.35.

**Count 9 – Fraud by Nondisclosure.**

170.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 169.

      © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

171.   All the Defendants concealed certain facts from the Plaintiffs, or failed to disclose certain facts to the Plaintiffs.  The Insurance Defendants concealed facts or failed to disclose facts relating to the policies of insurance.  All other Defendants concealed facts or failed to disclose facts related to their knowledge of the financial condition and practices of SIB.

172.   The Defendants had a duty to disclose the concealed or non-disclosed facts to the Plaintiffs.

173.   The concealed or non-disclosed facts were material.

174.   The Defendants knew that the Plaintiffs were ignorant of these facts, and that the Plaintiffs did not have an equal opportunity to discover these facts.

175.   The Defendants were deliberately silent when they had a duty to speak.

176.   By failing to disclose these facts, the Defendants intended to induce the Plaintiffs to take some action or to refrain from acting.

177.   The Plaintiffs relied on the Defendants' nondisclosure or concealment.

178.   The Plaintiffs were injured as a result of acting without knowledge of the undisclosed facts.

179.   The Defendants' non-disclosure or concealment caused the Plaintiffs' direct damages. The Defendants' non-disclosure or concealment proximately caused the Plaintiffs' consequential damages.

180.   The Defendants are liable to the Plaintiffs for direct and consequential damages for the Plaintiffs' injuries in the amount of $79,136,477.35.

*IV.d. Violations of Securities Laws*

**Count 10 – Texas Securities Act:  sale of unregistered securities.**

181.   The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 181.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

182.     Stanford CDs were securities within the meaning of the Texas Securities Act.

183.     The Stanford CDs were not registered with the Texas Securities Board. The Stanford CDs were not exempt from registration under state or federal law. Sham filings which purported to register the Stanford CDs with the Texas Securities Board were not sufficient to effect registration.

184.     The Defendants offered and sold the securities to the Plaintiffs in violation of the Texas Securities Act. The Defendants were an essential link in the chain of sellers, and they acted hand-in-glove with SIB to offer and sell the securities to the Plaintiffs.

185.     In the alternative, the Defendants materially aided the sellers of unregistered Stanford CDs. In aiding the sellers, the Defendants acted with intent to deceive or defraud the Plaintiffs, or with reckless disregard for the truth.

186.     The Defendants are liable to the Plaintiffs in rescission or damages in the amount of $79,136,477.35.

**Count 11 – Texas Securities Act: sale by unregistered dealer.**

187.     The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 186.

188.     Stanford Trust Co., Inc., Stanford Trust Company, Ltd. d/b/a Stanford Fiduciary Investor Services and other similar entities were not registered dealers of securities.

189.     The Defendants offered and sold the securities to the Plaintiffs in violation of the Texas Securities Act. The Defendants were an essential link in the chain of sellers, and they acted hand-in-glove with SIB to offer and sell the securities to the Plaintiffs.

190.     In the alternative, the Defendants materially aided the sellers of unregistered Stanford CDs. In aiding the sellers, the Defendants acted with intent to deceive or defraud the Plaintiffs, or with reckless disregard for the truth.

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

191.     The Defendants are liable to the Plaintiffs in rescission or for damages in the amount of $79,136,477.35.

**Count 12 – Texas Securities Act:  sale by untruth or omission.**

192.     The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 191.

193.     The Stanford CDs were securities within the meaning of the Texas Securities Act.

194.     The Defendants sold the Stanford CDs to the Plaintiffs.

195.     The Defendants made untrue statements material fact.  The Defendants omitted to state material facts necessary to make statements made, in light of the circumstances under which they were made, not misleading.

196.     In the alternative, the Defendants materially aided the sellers of Stanford CDs who sold the Stanford CDs by means of untrue statements of material facts and omissions of material facts necessary to make statements not misleading.  In aiding the sellers, the Defendants acted with intent to deceive or defraud the Plaintiffs, or with reckless disregard for the truth.

197.     The Defendants are liable to the Plaintiffs in rescission or for damages in the amount of $79,136,477.35.

**Count 13 – Violations of the Securities Act of 1933.**

198.     The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 197.

199.     The SECURITIES ACT of 1933, 15 U.S.C. §§ 77a, *et seq.*, prohibits:  (1) the sale of unregistered securities; and (2) the sale of securities by unregistered entities and persons. The Defendants sold the Plaintiffs unregistered securities.  The Defendants are not registered to sell securities.  Pursuant to 15 U.S.C. § 77l, Plaintiffs are entitled to rescind the transaction and are entitled to the statutorily specified remedies.

     © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

200.    The SECURITIES ACT of 1933 renders liable a person who offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  The Defendants made untrue statements of material fact and omitted to state material facts necessary in light of the circumstances in which they were made not misleading.  Pursuant to 15 U.S.C. §§ 77l, Plaintiffs seek to rescind the transactions and are entitled to the statutorily specified remedies and damages.

201.    Plaintiff's disclaim all other Federal Securities Act claims.

**Count 14 – Failure to place, effect, maintain, or renew insurance.**

202.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 201.

203.    The Insurance Defendants had a duty to place, effect, maintain, or renew insurance policies which were represented to be in place at the time securities were sold.  Placement, effectiveness, maintenance, or renewal of these policies was necessary in order to make statements made about securities not misleading in light of the circumstances in which they were made. In the alternative, the Insurance Defendants made statements about the presence of insurance with respect to securities, or the Defendants were aware of statements made, that omitted to state material facts about securities or omitted to state material facts necessary in order to make those statements not misleading in the circumstances in which the statements were made.

204.    Having failed to place, effect, maintain, or renew policies of insurance, the Insurance Defendants had a duty to notify the Plaintiffs of that failure.

205.    The Insurance Defendants sold the Plaintiffs securities in violation of the Texas Securities Act and Securities Act of 1933 by failing to place, effect, maintain, or renew

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

insurance that the Insurance Defendants represented to the Plaintiffs was in effect when it was not

in effect.

206.    The Insurance Defendants are liable to the Plaintiffs in rescission or for damages in

the amount of $79,136,477.35.

### IV.e. Claims against Trustees

**Count 15 – Return of Profits made by Trustee.**

207.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 206.

208.    The Co-Trustee Defendants served as trustees of the trusts settled by the Plaintiffs.

209.    The Co-Trustee Defendants realized profits through administration of the trusts or

arising out of administration of the trusts.

210.    The Co-Trustee Defendants are liable to the trusts settled by the Plaintiffs for the

profits made through administration of the trusts or arising out of administration of the trusts.

**Count 16 – Losses from trustee's failure to perform fiduciary duties.**

211.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 210.

212.    The Co-Trustee Defendants served as trustees of the trusts settled by the Plaintiffs.

213.    The Co-Trustee Defendants breached their fiduciary duty of loyalty and duty of care

to the trusts settled by the Plaintiffs.  These breaches of fiduciary duties were the proximate cause

of damage to the trust estates.

214.    The trusts settled by the Plaintiffs lost value as a result of these breaches.  Had the

Co-Trustee Defendants not breached their fiduciary duties, profits would have accrued to the trusts.

215.    The Co-Trustee Defendants are liable to the trusts settled by the Plaintiffs and their

beneficiaries for the losses in value to the trust estate resulting from the breach of trust and for the

profits that would have accrued to the trust estate had their been no breach of trust.

    © 2009 Pulman, Cappuccio, Pullen & Benson, LLP

216.    The settlor Plaintiffs are the proper persons to bring these claims against the Co-Trustee Defendants for losses to the trust estates.  The Defendants are liable to the Plaintiffs for damages in the amount of $23,150, 242.77.

**Count 17 – Appointment of successor trustee.**

217.    The Plaintiffs reallege and incorporate the allegations of paragraphs 1 – 216.

218.    Aleman, Galindo, Cordero & Lee (BVI) Trust is the trustee of the trusts settled by the Plaintiffs.

219.    The trustee has breached duties owed to the trusts settled by the Plaintiffs.

220.    The Plaintiffs, parties in interest to the trust, seek removal of the trustee and appointment of successor trustees.

### V. Jury Demand

221.    Plaintiffs hereby demand trial by jury.  Payment of the required Jury Fee is tendered to the Court simultaneously with the filing of Original Petition.

### VI. Prayer

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that this Court find the Defendants liable to them for the Causes of Action stated hereinabove, and award them:

a.   rescission in the amount of $79,136,477.35;

b.   damages in the amount of $79,136,477.35;

c.   special damages in the amount of $79,136,477.35;

d.   consequential damages in the amount of $79,136,477.35;

e.   treble damages in the amount of $237,409,432.05;

f.   attorney's fees;

g.   costs of court;

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

h.  prejudgment and post judgment interest;

i.  removal of trustees and appointment of successor trustees; and

j.  such other and further relief, both general and special, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO, PULLEN & BENSON, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Telecopier

By: _____
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Eric A. Pullen
Texas State Bar No. 24007881
epullen@pulmanlaw.com
David Lopez
Texas State Bar No. 12562975
dlopez@pulmanlaw.com
Lance Hunter "Luke" Beshara
Texas State Bar No. 24045492
lbeshara@pulmanlaw.com
Adam S. Block
Texas State Bar No. 24066850
ablock@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFFS**

© 2009 Pulman, Cappuccio, Pullen & Benson, LLP

# Exhibit "A-1"

385297

**CERTIFICATE OF DEPOSIT**
*NON-NEGOTIABLE*

**STANFORD**

STANFORD INTERNATIONAL BANK LTD.
No. 11 Pavilion Drive, P.O. Box 1300, St. John's, Antigua, West Indies

ORIGINAL

DATE   22 SEP 2008

DEPOSITOR(S)    DAN AULI PANOS   OR MARIA NAYADE PANOS PECHE

AMOUNT

CURRENCY    USD

"We" means the financial institution. "You" means the depositor(s) named above. We will pay this certificate to you when you surrender it to us on the maturity date. If more than one of you are named above, you will own this certificate as joint tenants with right of survivorship (and not as tenants in common). We will treat any one of you as owner for purposes of surrender, payments of principal and interest, presentation (demanding payment of amount due), transfer and any notice for or from you. Each of you appoints the other as your agent for the purpose described above. We will use the address on our records for mailing notices to you. You cannot transfer or assign this certificate or any rights under it without our written consent. This certificate is subject to the Bank's General Terms and Conditions and applicable Deposit Terms, which are incorporated herein by reference. Unless otherwise stated, all amounts specified are in U.S. Dollars or an equivalent amount if deposits are made in currency other than U.S. Dollars.

This    Flex CD    6 MONTHS  USD    Matures on    23 MAR 2009
THIS CERTIFICATE MATURES ON THE MATURITY DATE STATED ABOVE; IT WILL BE AUTOMATICALLY RENEWED FOR SUCCESSIVE TERMS, EACH EQUAL TO THE ORIGINAL TERM, UNLESS THE BANK IS ADVISED OTHERWISE FIVE (5) BANKING DAYS PRIOR TO MATURITY.

INTEREST TO MATURITY DATE WILL ACCRUE AT THE BASE RATE
OF           THE ANNUAL YIELD WILL BE   3.56   %
This rate may vary in accordance with the Bank's General Terms and Conditions
and applicable Deposit Terms.

Executed at St. John's, Antigua, West Indies
by AUTHORIZED SIGNATORY

---

**CERTIFICATE OF DEPOSIT**
*NON-NEGOTIABLE*

**STANFORD**

STANFORD INTERNATIONAL BANK LTD.
No. 11 Pavilion Drive, P.O. Box 1300, St. John's, Antigua, West Indies

385296

ORIGINAL

DATE   22 SEP 2008

DEPOSITOR(S)    DAN AULI PANOS   OR MARIA NAYADE PANOS PECHE

AMOUNT

CURRENCY    USD

"We" means the financial institution. "You" means the depositor(s) named above. We will pay this certificate to you when you surrender it to us on the maturity date. If more than one of you are named above, you will own this certificate as joint tenants with right of survivorship (and not as tenants in common). We will treat any one of you as owner for purposes of surrender, payments of principal and interest, presentation (demanding payment of amount due), transfer and any notice for or from you. Each of you appoints the other as your agent for the purpose described above. We will use the address on our records for mailing notices to you. You cannot transfer or assign this certificate or any rights under it without our written consent. This certificate is subject to the Bank's General Terms and Conditions and applicable Deposit Terms, which are incorporated herein by reference. Unless otherwise stated, all amounts specified are in U.S. Dollars or an equivalent amount if deposits are made in currency other than U.S. Dollars.

This    Flex CD    12 MONTHS  USD    Matures on    22 SEP 2009
THIS CERTIFICATE MATURES ON THE MATURITY DATE STATED ABOVE; IT WILL BE AUTOMATICALLY RENEWED FOR SUCCESSIVE TERMS, EACH EQUAL TO THE ORIGINAL TERM, UNLESS THE BANK IS ADVISED OTHERWISE FIVE (5) BANKING DAYS PRIOR TO MATURITY.

INTEREST TO MATURITY DATE WILL ACCRUE AT THE BASE RATE
OF           THE ANNUAL YIELD WILL BE   4.86   %
This rate may vary in accordance with the Bank's General Terms and Conditions
and applicable Deposit Terms.

Executed at St. John's, Antigua, West Indies
by AUTHORIZED SIGNATORY

---

**CERTIFICATE OF DEPOSIT**
*NON-NEGOTIABLE*

**STANFORD**

STANFORD INTERNATIONAL BANK LTD.
No. 11 Pavilion Drive, P.O. Box 1300, St. John's, Antigua, West Indies

182858

ORIGINAL

DATE   08 SEP 2008

DAN AULI PANOS   OR MARIA NAYADE PANOS PECHE

DEPOSITOR(S)

AMOUNT

CURRENCY    USD

"We" means the financial institution. "You" means the depositor(s) named above. We will pay this certificate to you when you surrender it to us on the maturity date. If more than one of you are named above, you will own this certificate as joint tenants with right of survivorship (and not as tenants in common). We will treat any one of you as owner for purposes of surrender, payments of principal and interest, presentation (demanding payment of amount due), transfer and any notice for or from you. Each of you appoints the other as your agent for the purpose described above. We will use the address on our records for mailing notices to you. You cannot transfer or assign this certificate or any rights under it without our written consent. This certificate is subject to the Bank's General Terms and Conditions and applicable Deposit Terms, which are incorporated herein by reference. Unless otherwise stated, all amounts specified are in U.S. Dollars or an equivalent amount if deposits are made in currency other than U.S. Dollars.

This    Fixed CD    6 MONTHS  USD    Matures on    08 MAR 2009
THIS CERTIFICATE MATURES ON THE MATURITY DATE STATED ABOVE; IT WILL BE AUTOMATICALLY RENEWED FOR SUCCESSIVE TERMS, EACH EQUAL TO THE ORIGINAL TERM, UNLESS THE BANK IS ADVISED OTHERWISE FIVE (5) BANKING DAYS PRIOR TO MATURITY.

INTEREST TO MATURITY DATE WILL ACCRUE AT THE BASE RATE
OF           THE ANNUAL YIELD WILL BE   3.95   %
This rate may vary in accordance with the Bank's General Terms and Conditions
and applicable Deposit Terms.

Executed at St. John's, Antigua, West Indies
by AUTHORIZED SIGNATORY

Exhibit "A-1," Page 1 of 1

# Exhibit "A-2"

























NOTES TO THE FINANCIAL STATEMENTS | CONTINUED

2.7 FINANCIAL ASSETS

2.8 IMPAIRMENT OF FINANCIAL ASSETS

NOTES TO THE FINANCIAL STATEMENTS | CONTINUED

2.2 INTEREST INCOME AND EXPENSE

2.3 FEE INCOME

2.4 INSURANCE

## NOTES TO THE FINANCIAL STATEMENTS

### CONCENTRATIONS OF ASSETS, LIABILITIES AND OFF-BALANCE SHEET ITEMS













NOTES TO THE FINANCIAL STATEMENTS — (Continued)

NOTE 14 : PROPERTY AND EQUIPMENT

NOTE 15 : OTHER ASSETS



NOTES TO THE FINANCIAL STATEMENTS — (Continued)

NOTE 13 : LOANS AND ADVANCES TO CLIENTS















# Exhibit "B-1"



BOWEN, MICLETTE & BRITT, INC.
1111 NORTH LOOP WEST, SUITE 400
P.O. BOX 922022
HOUSTON, TEXAS 77292-2022
(713) 880-7100
FAX (713) 880-7166

RE:    STANFORD INTERNATIONAL BANK LIMITED


I have been doing business with Stanford International Bank for over eleven years and find them to be first class business people.  We have placed the following coverages that are currently in effect:

1)  Directors and Officers Insurance with Lloyds of London - Best Rating A

2)  Bankers Blanket Bond with Lloyds of London - Best Rating A

3)  Excess FDIC Insurance with General Star Indemnity - Best Rating A++ IX

4)  Depository Insolvency with Great American Insurance Co. - Best Rating A XI

All of these coverages have been in effect for various terms for the past six to eleven years, however, no representations can be made that such coverages will remain in effect. Attached is a schedule of what the Best Ratings mean.

In order to qualify for the above coverages, the Bank underwent a Risk Management Review conducted by an outside audit firm.

We have found that all our dealings with the Bank have been conducted in a professional and satisfactory manner.

Sincerely,

Robert S. Winter
Financial Specialist

Insurance/Bonds/Risk Management


**Exhibit "B-1," Page 1 of 1**

# Exhibit "B-2"



BOWEN, MICLETTE, DESCANT & BRITT
1111 NORTH LOOP WEST, SUITE 400
P.O. BOX 922822
HOUSTON, TEXAS 77292-2022
(713) 880-7100
FAX: (713) 880-7166

March 8, 1996

Mr.

00600 Mexico, D. F.
M E X I C O

RE:   STANFORD INTERNATIONAL BANK

Dear Mr.

I have been doing business with Stanford International Bank for over eight years and find them to be first class business people.  Through Crump Financial Services, a Sedgwick subsidiary, we have placed the following coverages that are currently in effect:

   1)  Directors and Officers Insurance with Lloyds of London;

   2)  Bankers Blanket Bond with Lloyds of London;

   3)  Excess FDIC Insurance with General Star Indemnity; and

   4)  Depository Insolvency with Great American Insurance Co.

All of these coverages have been in effect from four (4) to eight (8) years.  During my association with Stanford Financial Group there has not been an occasion where any coverage has lapsed and not been renewed.

In order to qualify for the above coverage, the Bank underwent a stringent Risk Management Review conducted by an outside audit firm.

We feel that you will be pleased with any dealings you have with Stanford International Bank.

Sincerely,

Robert S. Winter
Financial Specialist                   Insurance/Bonds/Risk Management

**Exhibit "B-2," Page 1 of 1**

# Exhibit "B-3"



Telephone   (303) 218-4020
Fax         (303) 218-4058
Website     www.willis.com

Direct Line (303) 218-4037
Direct Fax  (303) 218-4058
E-mail      Amy.Baranoucky@willis.com

RE:   STANFORD INTERNATIONAL BANK LIMITED

Dear Sirs:

We are the insurance broker for Stanford International Bank and find them to be first class business people.  We have placed the following coverages that are currently in effect:

1.  Directors and Officers Liability Insurance with Lloyds of London (Expiration 8/15/07);

2.  Bankers Blanket Bond with Lloyds of London (Expiration 8/15/07);

All of these coverages have been in effect for various terms for the past six to twelve years, however, no representations can be made that such coverages will remain in effect.

In order to qualify for the above coverages, the Bank underwent a stringent Risk Management Review conducted by an outside audit firm.

We have found that all our dealings with the Bank have been conducted in a professional and satisfactory manner.

Sincerely,

Amy S. Baranoucky
Vice President
Executive Risks

Willis of Colorado, Inc.
Independence Plaza
1050 17th Street
Suite 750
Denver, CO 80265